**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, the STATE OF NEW JERSEY, and the STATE OF NEW YORK, *ex rel.* JERSEY STRONG PEDIATRICS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WANAQUE CONVALESCENT CENTER, WANAQUE OPERATING CO., L.P., SENIORS MANAGEMENT NORTH, INC., and H B A CORPORATION,<br><br>Defendants. | Civil Action No: 14-6651-SDW-SCM<br><br>**OPINION**<br><br>June 14, 2017 |

**WIGENTON**, District Judge.

Before this Court is Defendant Wanaque Convalescent Center ("WCC"), Wanaque Operation Co., L.P., and Seniors Management North, Inc.'s (collectively "Defendants")[1] Motion to Dismiss Jersey Strong Pediatric, LLC's ("Jersey Strong") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367 and 31 U.S.C. § 3732(a). Venue is proper pursuant to 28 U.S.C. § 1391 and 31 U.S.C. §

---

[1] The parties stipulated to the dismissal of H B A Corporation on February 8, 2017. (Dkt. No. 18.)

1

3732(a). This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

I.  BACKGROUND AND PROCEDURAL HISTORY

Jersey Strong is a New Jersey corporation owned and operated by Dr. John Doe. (Compl. ¶¶ 9-10.) Dr. Doe is a pediatric physician with experience "treating children requiring specialized medical care." (*Id.* ¶ 38.) Defendant WCC is a skilled nursing and rehabilitation facility located in Haskell, New Jersey, which provides "long-term care to geriatric and pediatric residents" including ventilator-dependent children. (*Id.* ¶¶ 14, 35.) Defendant Wanaque Operating Co., L.P. is "the licensed owner of" WCC, and Defendant Seniors Management North, Inc. "is in charge of the administrative functions at" WCC. (*Id.* ¶¶ 15-18.)

Dr. Doe began treating patients at WCC in 2003 and served as the facility's medical director from 2003 - 2008. (*Id.* ¶¶ 39, 41, 75.) During that time, WCC "achieved a drastic increase in patients and beds." (*Id.* ¶ 41.) Jersey Strong alleges that that increase led to substandard care and was achieved, in part, by improperly manipulating the patient population to give preferential treatment to out-of-state residents. (*Id.* ¶¶ 4-7, 41-65.) In addition, Jersey Strong alleges that in order to "maximize profit, Defendants fraudulently bill[ed] Medicare and Medicaid." (*Id.* ¶ 66.) The Complaint specifically alleges that Defendants either failed to ascertain, or ignored the existence of, patients' private health insurance and, as a result, violated secondary payment laws by billing Medicare and Medicaid as primary payer when submitting claims for payment. (*Id.* ¶¶ 68-69, 72-74.)[2] The Complaint identifies eight general examples of Defendants' allegedly

---

[2] In order to coordinate payments where patients have private insurance coverage and are Medicare/Medicaid eligible, Congress enacted secondary payment laws ("MSP laws"). *Fanning v. U.S.*, 346 F.3d 386, 388-89 (3d Cir. 2003); *see also Negron v. Progressive Cas. Ins. Co.*, Civ. No. 15-577(NLH/KMW), 2016 WL 796888, at *1 (D.N.J. Mar. 1, 2016) (discussing the Medicare and Medicaid Secondary Payer statutes). The MSP laws "dictate when Medicare[/Medicaid] will pay a medical claim as the 'primary payer' and when Medicare[/Medicaid] will pay as the 'secondary payer.'" *United States ex rel. Drescher v. Highmark, Inc.*, 305 F. Supp. 2d 451, 454-55 (E.D. Pa. 2004)

wrongful billing practices, omitting the names of the patients involved because they were minors. (*Id*. ¶¶ 78-137.)

On October 2, 2014, Jersey Strong brought suit as a *qui tam* relator on behalf of the United States of America, the State of New Jersey and the State of New York alleging violations of the Federal False Claims Act ("FCA"), the New Jersey False Claims Act ("NJFCA"), and the New York False Claims Act ("NYFCA"). (Dkt. No. 1.) The United States, New York and New Jersey declined to intervene in November 2016. (Dkt. No. 5.) Defendants filed the instant motion to dismiss on January 26, 2017. (Dkt. No. 11.) Jersey Strong filed its timely opposition on February 21, 2017 and Defendants filed their reply on February 27, 2017. (Dkt. Nos. 19, 20.)

## II.     LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept

---

(discussing the claim submission process). "Generally, under the MSP statute and related regulations, the private insurance carrier is the primary payer," and "the secondary payer generally pays a smaller portion of the claim than the amount paid by the primary payer." *Id.* at 454.

as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.' " *Park v. M & T Bank Corp.,* No. 09–cv–02921, 2010 WL 1032649, at *5 (D.N.J. Mar.16, 2010) (citing *Lum v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir. 2004)). To satisfy Rule 9(b)'s pleading requirements for FCA claims, plaintiffs "must provide 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 157-58 (3d Cir. 2014) (internal citation omitted).

## III. DISCUSSION

A.

The FCA "prohibits the submission of false or fraudulent claims for payment to the United States and authorizes *qui tam* actions, by which private individuals may bring a lawsuit on behalf of the government in exchange for the right to retain a portion of any resulting damages award." *Foglia v. Renal Ventures Mgmt., LLC*, 830 F. Supp. 2d 8, 14 (D.N.J. 2011) (citing *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S.Ct. 1885, 1889 (2011)); *see also Universal Health Serv., Inc. v. U.S.* 136 S. Ct. 1989, 1996-97 (2016) ("*Escobar*") (discussing the history and purpose of the FCA). "The primary purpose of the FCA 'is to indemnify the government -- through its restitutionary penalty provisions -- against losses caused by a defendant's fraud.'" *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304 (3d Cir. 2011) (internal citation omitted).

The FCA provides, in relevant part:

Any person who –

> (A) knowingly[3] presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or, (C) conspires to commit a violation of subparagraph (A), (B) . . . is liable to the United States of America for a civil penalty . . .

31 U.S.C.S. § 3729(a)(1).[4]

---

[3] The terms "knowing" and "knowingly" "(A) mean that a person, with respect to information -- (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1).

[4] "On May 20, 2009, Congress enacted the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), which amended the FCA and re-designated 31 U.S.C. § 3729(a)(1) as 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(2) as 31 U.S.C. § 3729(a)(1)(B) [and 31 U.S.C. § 3729(a)(3) as 31 U.S.C. § 3729(a)(1)(C)]." *U.S. ex rel. Gerry Phalp & Matt Peoples v. Lincare Holdings, Inc. & Lincare, Inc., d/b/a Diabetics Experts of Am.*, No. 16-10532, 2017 WL 2296878, at *3 n.5 (11th Cir. May 26, 2017). The amendment changed the designations, but not the substance of the Act for purposes of this motion. Various cases cited by the parties reference the pre-2009 statutory designation, but for accuracy's sake, this Court cites to the post-2009 designations.

"There are two categories of false claims under the FCA: a factually false claim and a legally false claim." *Wilkins*, 659 F.3d at 305. "A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *Id*. (internal citation omitted); *see also Negron*, 2016 WL 796888 at *6. Legally false claims may be express or implied. *Wilkins*, 659 F.3d at 305. "Under the 'express false certification' theory, an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." *Id.* Under the "implied false certification" theory, an entity is liable if it "seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment." *In re Plavix Mktg., Sale Practices & Prod. Liab. Litig.*, 123 F. Supp. 3d 584, 600 (D.N.J. 2015) (citing *Wilkins*, 659 F.3d at 305).

For legally false claims, plaintiffs must plead that the regulation at issue is material. *Escobar*, 136 S. Ct. at 2004 n.6 (stating that plaintiffs must "plead[] facts to support allegations of materiality"). Under the FCA, a regulation is material if it is "so central to the provision" of services that the government would "not have paid the[] claims had it known of the[] violations." *Id.* (describing the materiality standard as "rigorous" and "demanding"); *see also U.S. ex rel. Gerasimos v. Genentech, Inc.*, 855 F.3d 481, 492 (3d Cir. 2017) (recognizing the "heightened materiality standard" set out in *Escobar*). "[A] misrepresentation is not material 'merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment . . . [or because] the Government would have the option to

decline to pay if it knew of the defendant's noncompliance.'" *Gerasimos*, 855 F.3d at 489 (citing *Escobar*, 136 S. Ct. at 2003).

The Complaint contains a single count under the FCA, and although Jersey Strong attempts to shoehorn multiple causes of action into Count One, this Court will construe Count One as raising an implied false certification claim pursuant to 31 U.S.C. § 3729(a)(1), specifically, that "Defendants fraudulently billed Medicare and Medicaid as primary payer despite the existence of alternative coverage, thereby violating secondary payer laws." (Pl. Opp. Br. at 7; *see also* Compl. ¶165; *Negron*, No. CV 14-577(NLH/KMW), 2016 WL 796888, at *6 (classifying a relator's claims that defendants "caused a claim to be submitted under Medicare which violated the Medicare Secondary Payer Act" as an implied false certification claim). [5] "To establish a *prima facie* claim under 31 U.S.C. § 3729(a)(1), a plaintiff must show that: '(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.'" *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004) (internal citations omitted); *see also United States ex rel. Rahimi v. Zydus Pharm. (USA), Inc.*, Civ. No. 15-6536-BRM-DEA, 2017 WL 1503986, at *11 (D.N.J. Apr. 26, 2017). As noted above, Jersey Strong must also plead that the MSP laws are material to the government's decision to pay the submitted claims.

---

[5] To the extent Jersey Strong is attempting to raise a factually false claim for substandard care or a claim of conspiracy, those claims are dismissed. First, the Complaint contains only vague and conclusory allegations of substandard patient care, (Compl. ¶¶ 4, 42-50, 67, 167), and nowhere pleads that factually false claims were submitted for that treatment. This is insufficient under either Rule 12(b)(6) or Rule 9(b). Further, to bring an FCA claim for conspiracy under § 3729(a)(1)(C) Jersey Strong must show "(1) a conspiracy to get a false or fraudulent claim allowed or paid and (2) an act in furtherance of the conspiracy." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). The Complaint is devoid of any such showing. This Court notes that in addition to these shortcomings, Jersey Strong's opposition brief does not address either substandard care or conspiracy.

There appearing to be no dispute that claims were submitted for payment, this Court must first determine whether the claims submitted were false or fraudulent. Jersey Strong alleges that Defendants fraudulently billed Medicare and Medicaid instead of patients' private health insurance policies. (Compl. ¶ 72-74.) To support its allegations, Jersey Strong provides eight examples of claims that allegedly violated the MSP laws. (Compl. ¶¶ 78-137.) Although these examples do not contain patient names, dates of treatment, or primary insurance policy numbers, they do put Defendants on notice of the allegations against them and create "a strong inference that [false] claims were actually submitted." *Foglia*, 830 F. Supp. 2d at 157-58; *see also Drescher*, 305 F. Supp. 2d at 457-58, 461. This is enough to survive Defendants' motion to dismiss.[6]

Although Jersey Strong sufficiently pleads that Defendants' claims for reimbursement were false or fraudulent, the Complaint does not adequately plead materiality. Specifically, Jersey Strong never discusses whether the MSP laws are material to the government's decision to pay Medicaid/Medicare claims in this context. There is no doubt that Congress enacted the MSP laws to cut costs by making Medicaid/Medicare the payer of last resort. *See Fanning*, 346 F.3d at 389.[7] However, "[t]hat the government or a federal agency found a particular issue important enough to regulate speaks little to the intended consequences of noncompliance." *United States ex rel. Schimelpfenig v. Dr. Reddy's Lab. Ltd.*, Civ. No. 11-4607, 2017 WL 1133956, at *7 (E.D. Pa. Mar. 27, 2017) (noting that "[u]ltimately, the relevant inquiry is whether the Government's payment

---

[6] Additional information such as patient dates of admission or the specifics of private insurance plans could be obtained in discovery.

[7] Congress also created a statutory mechanism which allows the government to seek reimbursement from primary payers where the government has been improperly billed. *See, e.g.*, *Negron*, 2016 WL 796888 at *8 (discussing the existence of a conditional payment provision of the MSP laws which allows Medicare to be reimbursed if it makes a payment that should have been paid by a primary payer). This suggests that "perfect compliance" with the MSP law is not an "absolute condition for receiving Medicare [or Medicaid] payments for services rendered." *Wilkins*, at 310.

decision was influenced by the claimant's purported compliance with a particular requirement, not whether a given issue has been deemed worthy of regulation"). Under *Escobar*, Jersey Strong is obligated to address the materiality of the MSP laws, yet the Complaint ignores the issue entirely. In the absence of any showing of materiality Defendants' Motion to Dismiss will be granted as to the federal FCA claim in Count One.[8]

B.

Because this Court will grant Defendants' motion to dismiss Jersey Strong's federal claims, it does not have original jurisdiction over the state law claims asserted in Counts Two and Three. This Court declines to exercise supplemental jurisdiction over those Counts pursuant to 28 U.S.C. § 1367, and, therefore, will also grant Defendants' motion to dismiss Counts Two and Three.[9]

---

[8] Because Jersey Strong has failed to adequately plead materiality, this Court need not address whether Defendants acted knowingly. This Court notes, however, that Jersey Strong's allegations, that it made Defendants aware of patients' private insurance and that Defendants intentionally ignored the existence of such primary payers, is sufficient to satisfy this element.

[9] Although this Court will not address the substance of Jersey Strong's state law claims, it recognizes that the NJFCA was enacted in 2008, and is not retroactive. *See United States v. Loving Care Agency, Inc.*, Civ. No. 11-6142 (WJM), 2016 WL 7408848, at *9 (D.N.J. Dec. 22, 2016). Therefore, any claims under that statute for actions the occurred prior to March 13, 2008 are barred. There is no such limitation on claims under the NYFCA. *See U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 540-41 (S.D.N.Y. 2014) (noting that the NYFCA was enacted on April 1, 2007 and does apply retroactively).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** without prejudice. Should Jersey Strong so choose, it has thirty (30) days to file an Amended Complaint.[10] An appropriate order follows.

   /s/ Susan D. Wigenton     
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          Steven C. Mannion, U.S.M.J.
               Parties

---

[10] Any amended complaint must include separate counts for each claim asserted.