# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, the STATE OF NEW JERSEY, and the STATE OF NEW YORK, *ex rel.* JERSEY STRONG PEDIATRICS, LLC, | Hon. Jose L. Linares, U.S.D.J.<br>Hon. Steven C. Mannion, U.S.M.J.<br><br>Civil Action No.: 14-6651 |
|        Plaintiffs/Relator, | |
|    v. | |
| WANAQUE CONVALESCENT CENTER, WANAQUE OPERATING CO., L.P. and SENIORS MANAGEMENT NORTH, INC. | |
|        Defendants. | |

## RELATOR'S BRIEF IN OPPOSITION TO DEFENDANTS' <u>MOTION FOR RULE 11 SANCTIONS</u>

Jeremy E. Abay (NJ# 083862013)
John K. Weston (*Pro Hac Vice*)
SACKS WESTON DIAMOND, LLC
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
T: 215-925-8200 | F: 267-639-5422
jabay@sackslaw.com
jweston@sackslaw.com

*Attorney for Relator,*
*Jersey Strong Pediatrics, LLC*

Dated:  December 26, 2018
Return Date:  January 7, 2019

## **TABLE OF CONTENTS**

Table of Authorities ................................................................................ ii

Introduction ........................................................................................1

Procedural History ...............................................................................3

    I.     Wanaque's First, Defective Rule 11 Letter .............................................3

    II.    Wanaque's First Rule 11 Theory was Rejected ...................................3

    III.   Wanaque's New Rule 11 Argument is Baseless ...................................4

Argument............................................................................................6

    I.     The Rule 11 Standard .........................................................................6

    II.    The Facts Support the Allegations ......................................................10

    III.   Relator's Counsel Complied with Rule 11 .........................................11

    IV.   Defendants Have Twice Misused Rule 11 .........................................13

        A.  Wanaque's first Rule 11 threat was procedurally defective and meant to harass or intimidate. ...............................................15

        B.   Wanaque's current Rule 11 motion is baseless...........................16

Conclusion ...........................................................................................17

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Adesanya v. Novartis Pharm. Corp.*, Civ. No. 13-5564,
  2016 U.S. Dist. LEXIS 108056, 2016 WL 4401522 (D.N.J. Aug. 15, 2016).......9

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*,
  498 U.S. 533 (1991)................................................................................................7

*Doering v. Union Cty. Bd. of Chosen Freeholders*,
  857 F.2d 191 (3d Cir. 1988) ................................................................................8

*Ford Motor Co. v. Summit Motor Products, Inc.*,
  930 F.2d 277 (3d Cir.1991) ................................................................................8

*Foy v. First National Bank of Elkhart*,
  868 F.2d 251 (7th Cir. 1989) ............................................................................14

*Gaiardo v. Ethyl Corp.*,
  835 F.2d 479 (3d Cir. 1987)..............................................................................14

*In re Cendant Corp. Derivative Action Litig.*,
  96 F.Supp.2d 403 (D.N.J. 2000) ........................................................................8

*In re Central Ice Cream Co.*,
  836 F.2d 1068 (7th Cir. 1987) ..........................................................................14

*In re Rosebar*, No. 13-00535,
  2014 Bankr. LEXIS 5181, 2014 WL 7403573 (Bankr. D.D.C. Dec. 29, 2014) .14

*Kanter v. Scharf*, Civ. No. 13-3157,
  2013 U.S. Dist. LEXIS 119809, 2013 WL 4509979 (D.N.J. Aug. 23, 2013).......8

*Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*,
  365 F.Supp. 975 (E.D. Pa. 1973) ........................................................................7

*Leoco, S.A. v. Caribe Crown, Inc.*,
  571 N.E.2d 759 (Ill. App. Ct. 1991) ................................................................14

*Local 106, Service Employees Int'l Union v. Homewood Memorial Gardens, Inc.*,
  838 F.2d 958 (7th Cir. 1988) ............................................................................14

*McMahon v. Shearson/American Express, Inc.*,
  896 F.2d 17 (2d Cir.1990) ................................................................................15

*Meeks v. Jewel Companies, Inc.*,
  845 F.2d 1421 (7th Cir. 1988) ..........................................................................14

*Moeck v. Pleasant Valley Sch. Dist.*,
  844 F.3d 387 (3d Cir. 2016) ..............................................................................8

*Nemeroff v. Abelson*,
  620 F.2d 339 (2d Cir. 1980) ..............................................................................7

*Roberts v. Peat, Marwick, Mitchell & Co.*,
  857 F.2d 646 (9th Cir. 1988) ............................................................................14

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
    682 F.3d 170 (2d Cir. 2012) ..............................................................................15
*Traina v. United States*,
    911 F.2d 1155 (5th Cir. 1990) ...........................................................................14
*U.S., ex rel. Jersey Strong Pediatrics, LLC v. Wanaque Convalescent Ctr.*,
    Civ. No. 14-6651, 2017 U.S. Dist. LEXIS 150566, 2017 WL 4122598
    (D.N.J. Sep. 18, 2017) ........................................................................................1
*Universal Health Serv., Inc. v. U.S. ex rel. Escobar*,
    136 S. Ct. 1989 (2016) ........................................................................................4

## Statutes

18 N.Y.C.R.R. § 540.6(e) ...........................................................................................9
42 U.S.C. § 1396a(25)(C) ..........................................................................................9
31 U.S.C. § 3729 .........................................................................................................5

## Rules

Fed. R. Civ. P. 11 .............................................................................................. passim

## INTRODUCTION

Defendants Wanaque Convalescent Center, Wanaque Operating Co., L.P., and Seniors Management North, Inc. (collectively "Wanaque") have moved this Court for sanctions under Fed. R. Civ. P. 11 against counsel for Relator Jersey Strong Pediatrics, LLC.  (Defs.' Mot. for Sanctions, ECF No. 66.)  This is Wanaque's second foray against Relator and its counsel under Rule 11.  However, it is the first to actually comply with Rule 11.

After filing its first motion to dismiss, Wanaque attempted to coerce a voluntarily dismissal of the complaint by threatening Rule 11 sanctions.  (Defs.' Ex. A, ECF 66-3.)  The threat, which failed to comply with Rule 11(c)'s safe harbor provision, criticized the complaint as lacking a "cognizable legal theory."  Wanaque abandoned its first threat after the Relator's claims were sustained by this Court. (Op., Sept. 18, 2017, ECF No. 29.)[1]

Wanaque's current motion is limited to one argument: that Relator's counsel violated Rule 11 by filing a complaint without performing an adequate investigation. This argument is premised on the false proposition that "Relator never had any personal knowledge of any billing practice at Wanaque."  (Defs.' Mem. 5, ECF No.

---

[1] *U.S., ex rel. Jersey Strong Pediatrics, LLC v. Wanaque Convalescent Ctr.*, Civ. No. 14-6651, 2017 U.S. Dist. LEXIS 150566, 2017 WL 4122598 at *3 (D.N.J. Sep. 18, 2017) (Wigenton, S.).

66-1.)  Thus, the motion seeks relief from Relator's counsel only, and not from Relator.[2]

Notably absent from its Rule 11 motion is any argument that Wanaque actually complied with the law, or that discovery failed to produce evidence of Wanaque's misconduct.  Indeed, Dr. Briglia produced evidence demonstrating that the services he provided at Wanaque were paid by private insurers, and it is uncontested that Wanaque never submitted claims to these private insurers before billing Medicaid.  (Pl.'s 56.1 Stmt. ¶¶ 100, 103-04, 114-16, 118, 126, 128, 137, 139, 144-45.)  It is now obvious that Wanaque was – and continues to be – oblivious to its regulatory obligations.  (Pl.'s Br. in Opp'n to Summ. J. 17-19.)

---

[2]  Wanaque's proposed order would require Relator's counsel to reimburse Defendants, and it does not seek relief from Relator.  (ECF No. 66-6.)

## PROCEDURAL HISTORY

### I.   WANAQUE'S FIRST, DEFECTIVE RULE 11 LETTER

The original *qui tam* complaint was unsealed on November 16, 2016, and Wanaque was served accordingly. (Unsealing Order, Nov. 16, 2016, ECF No. 6.) Wanaque's first move was to file a motion to dismiss under Rule 12(b)(6) and 9(b). (Mot. to Dismiss, Jan. 26, 2017, ECF No. 11.) Two days after Relator filed its opposition brief, Wanaque's counsel sent a letter demanding that the complaint be voluntarily dismissed on grounds that the pleading "offer[ed] neither a cognizable legal theory, nor facts to demonstrate a violation of the FCA." (Defs.' Ex. A, ECF 66-3.) So confident that the motion to dismiss would be granted, Wanaque's counsel threatened Rule 11 sanctions unless "Jersey Strong immediately dismiss its Complaint." That letter was not accompanied by a draft Rule 11 motion, and thus did not comply with Rule 11(c)(2)'s safe harbor requirements.[3] Appearing to be nothing more than a scare tactic, Wanaque's letter was ignored.

### II.   WANAQUE'S FIRST RULE 11 THEORY WAS REJECTED

Wanaque's first motion to dismiss was granted on the sole grounds that the complaint did not adequately allege the element of materiality. (Op., June 14, 2017,

---

[3] "Numerous Circuit Courts have found that sending an adversary an informal letter as opposed to the actual motion fails to comply with Rule 11." *Albibi v. Tiger Mach. Co.*, No. CIV.A. 11-5622 JLL, 2014 WL 3548312, at *2 (D.N.J. July 17, 2014) (Linares, J.).

ECF No. 21.)  Since the original complaint was drafted and filed under seal before the Supreme Court's decision in *Universal Health Serv., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2002-03 (2016), it did not contain the specific materiality allegations required by that opinion.  Thus, this Court granted leave to amend.

Relator's amended complaint was filed on July 14, 2017.  (Am. Compl., ECF 23.)  In compliance with this Court's June 14, 2017 opinion, the amended complaint contained additional allegations regarding materiality.  (Am. Compl. ¶¶ 8, 168-69, 178-79, 188-89.)  Nevertheless, Wanaque filed another motion to dismiss with recycled Rule 9(b) and causation arguments that were rejected on the first go-round.  (Pl.'s Br. in Opp'n to Mot. to Dismiss 4, Aug. 22, 2017, ECF No. 27.)

This Court sustained Relator's claims and denied Wanaque's second motion.  (Op., Sept. 18, 2017, ECF No. 29.)  Wanaque's then Rule 11 position, that the complaint "offer[ed] neither a cognizable legal theory, nor facts to demonstrate a violation of the FCA," was summarily rejected.  Accordingly, Wanaque never followed through on its February 23, 2017 letter threatening sanctions.  (ECF 66-3.)

## III.   WANAQUE'S NEW RULE 11 ARGUMENT IS BASELESS

After the amended complaint was sustained, the parties pursued discovery. Discovery produced evidence of Wanaque's misconduct, which is discussed in detail in Relator's brief opposing summary judgment and responsive statement of facts, filed concurrently herewith.  In sum, Wanaque admitted that it systematically

violated material regulations requiring Wanaque to identify and file claims with private insurers, before billing the government.[4]  (Pl.'s 56.1 Stmt. ¶¶ 100, 118, 128, 139, 145.)   Moreover, Relator identified private health policies which covered Wanaque's services, and which paid Relator for similar services.  (Pl.'s 56.1 Stmt. ¶¶ 128-29, 133, 137-38, 144.)   Wanaque ignored these private insurers, and recovered its charges from Medicaid instead (over $6 million in taxpayer-funded dollars).  Wanaque's claims to the government, therefore, violated the False Claims Act, 31 U.S.C. § 3729.

Although Relator has established liability, Wanaque still wants Relator sanctioned.  Because Wanaque's original Rule 11 position – that the complaint did not allege a cognizable legal theory – was rejected, Wanaque has pivoted to a new Rule 11 theory – that Relator's counsel did not adequately investigate what Relator has successfully proven through discovery.  And like its first threat, Wanaque's current Rule 11 threat coincides with another request for dismissal (Wanaque's third), and is likely meant to bolster that futile request.  For the reasons discussed below, Wanaque's Rule 11 motion should be denied.

---

[4] *See* Pl.'s Br. in Opp'n to Summ. J., Regulatory Framework Section.

## ARGUMENT

## I.   THE RULE 11 STANDARD

As pertinent to Wanaque's motion, Rule 11 imposed these duties on Relator's

counsel:

> (b) **Representations to the Court**. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, **formed after an inquiry reasonable under the circumstances**:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>>
>> (3) **the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b) (emphasis added).

Violation of Rule 11 may warrant the imposition of sanctions.  Fed. R. Civ.

P. 11(c)(1).  However, any sanction must be limited "to what suffices to deter

repetition of the conduct or comparable conduct by others similarly situated."  Fed.

R. Civ. P. 11(c)(4)  "The sanction may include nonmonetary directives; an order to

pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

The official comments to the rule stress that the focus is on "reasonableness under the circumstances."[5]  According the Advisory Committee:

> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.  The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.  Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

Fed. R. Civ. P. 11 advisory committee notes.

---

[5] From the 1983 Advisory Committee notes:

> The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. *See Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F.Supp. 975 (E.D. Pa. 1973). This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation. *See Nemeroff v. Abelson*, 620 F.2d 339 (2d Cir. 1980).

Fed. R. Civ. P. 11 advisory committee notes.  *Accord Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 551 (1991).

The Third Circuit has clarified the standard to be applied when assessing "reasonableness under the circumstances." So long as the "pleadings have a factual basis and are not 'patently unmeritorious or frivolous,'" Rule 11 is not violated. *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 (3d Cir. 2016).

> We have explained that the standard under Rule 11 is "stringent" because sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (alterations in original) (citations and internal quotation marks omitted).

*Id.* at 391, n.7.

"Generally, sanctions are prescribed 'only in the exceptional circumstances' where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co. v. Summit Motor Products, Inc*., 930 F.2d 277, 289 (3d Cir.1991) (citing *Doering*, 857 F.2d at 194). Courts "have denied sanctions where the law and facts, even if not adopted by the court, are ambiguous and could be reasonably interpreted in more than one way." *In re Cendant Corp. Derivative Action Litig*., 96 F.Supp.2d 403, 405 (D.N.J. 2000). Thus, even when a court disagrees with a party's position, Rule 11 sanctions may be too drastic of a remedy. *See Kanter v. Scharf*, Civ. No. 13-3157, 2013 U.S. Dist. LEXIS 119809, 2013 WL 4509979, at *8 (D.N.J. Aug. 23, 2013) (Linares, J.).

8

Wanaque does not contest this standard.  In fact, Wanaque does not address the Rule 11 standard at all.

In assessing a lawyer's compliance with Rule 11, this Court has noted that "[a]ttorneys may reasonably rely on what their clients tell them and advocate for their interests accordingly, unless and until they have reason to believe that their clients are lying." *Adesanya v. Novartis Pharm. Corp.*, Civ. No. 13-5564, 2016 U.S. Dist. LEXIS 108056, 2016 WL 4401522, at *8 (D.N.J. Aug. 15, 2016) (Wigenton, J.), *appeal dismissed*, No. 16-3615, 2016 U.S. App. LEXIS 23936, 2016 WL 9665174 (3d Cir. Nov. 22, 2016).

As the Relator's brief in opposition to summary judgment explains, the law required Wanaque to seek payment from all potential third-party resources before submitting its claims to New York Medicaid.[6]  (Pl.'s Br. in Opp'n to Summ. J. 1-6.) Wanaque's repeated failures to comply with this law, along with its lack of coherent compliance policies, establish that Wanaque either recklessly disregarded or deliberately ignored its obligation to treat Medicare/Medicaid as a payer of last resort.  (Pl.'s 56.1 Stmt. ¶¶ 80-90.)  In submitting claims to these taxpayer-funded programs, therefore, Wanaque falsely certified its compliance with secondary payer requirements, including 18 N.Y.C.R.R. § 540.6(e) and 42 U.S.C. § 1396a(25)(C). Since Wanaque's right to receive reimbursement was conditioned on these material

---

[6] *See, e.g.*, 18 N.Y.C.R.R. § 540.6(e).

requirements, Wanaque damaged the government by taking money that it was not entitled to. There is clear liability in this case.

## II.    THE FACTS SUPPORT THE ALLEGATIONS

Relator's brief in opposition to summary judgment and its statement under Local Civil Rule 56.1 describe, in detail, the factual allegations which support the claims against Wanaque. The following facts stand out.

Wanaque did not seriously attempt to locate and bill private coverage, because Wanaque wanted to be paid by Medicaid. (Pl.'s Br. in Opp'n to Summ. J. 20-21.) Wanaque did not have any compliance programs or policies regarding Medicaid as secondary payer. (Pl.'s 56.1 Stmt. ¶¶ 80-85.) Essentially, Wanaque conducted an *ad hoc*, hit-or-miss private coverage "investigation." Wanaque did not have any protocols in place to identify when a patient's insurance coverage changed; that is, if private coverage became available, Wanaque would not know it. (Pl.'s 56.1 Stmt. ¶ 81.) Even if Wanaque did later locate private coverage, it appears that Wanaque did not comply with federal and state law, and refund Medicaid's payment. (Pl.'s 56.1 Stmt. ¶¶ 81-82, 85, 125-26, 132-33, 139.) Wanaque's billing designee was unable to say whether Wanaque had ever refunded a Medicaid program for an overpayment, nor did she even know what an overpayment was. (Pl.'s 56.1 Stmt. ¶ 82, 85.)

Wanaque ignored clear signs that private insurers would cover Wanaque's claims. Thus, a private insurance carrier was listed on patient K.W.'s intake form, yet Wanaque never submitted claims to that carrier. (Pl.'s 56.1 Stmt. ¶¶ 92, 100.) Relator, rendering services for the same patient, billed the private carrier and was paid. (Pl.'s 56.1 Stmt. ¶¶ 104-05.) The same pattern occurred for patient K.F. (Pl.'s 56.1 Stmt. ¶¶ 106-119.) Either through Wanaque's lack of a follow-up policy, or through Wanaque's deliberate ignorance/recklessness, Wanaque never billed private insurers that were identified during or after a patient's admission, even though Relator was paid by those same private insurers. (Pl.'s 56.1 Stmt. ¶¶ 91-145.)

As for A.C., the one patient whose private insurer was billed by Wanaque, Wanaque initially missed his private coverage. (Pl.'s 56.1 Stmt. ¶¶ 146-47.) It was Relator who identified the private coverage. (Pl.'s 56.1 Stmt. ¶¶ 148-49.) And it was Relator who secured the authorizations for Wanaque. (Pl.'s 56.1 Stmt. ¶ 149.)

## III.   RELATOR'S COUNSEL COMPLIED WITH RULE 11

Simply put, the evidence produced during discovery fully vindicated the expectations generated by Relator's own experiences at Wanaque. For example, the amended complaint alleges:

> Underlying Defendants' desire to fill their beds with Medicare and Medicaid beneficiaries is Defendants' fraudulent billing practice. In order to maximize the profitability of their patient population, Defendants bill Medicare and Medicaid as primary payer even when a patient has private insurance, or some other source of medical benefits,

available.   Since payment of Medicare and Medicaid funds are conditioned on compliance with pertinent and material regulations, including secondary payer laws, the claims arising from the aforesaid billing practice are false and fraudulent…

(Am. Compl. ¶ 8.)

Wanaque's billing designee admitted that Wanaque customarily billed taxpayer-funded health plans even after private coverage was identified.  (Pl.'s Stmt. ¶¶ 92, 100, 107, 118, 125-26, 132-39.)   Wanaque argues that it was under no obligation to bill private insurance companies because Wanaque expected that the applicable insurance policies would not cover Wanaque's services.  (Defs.' Summ. J. Mem. 7-8, ECF No. 67-1.)  This was not, and is not, the law.  Both federal and state law – based on the reasonable premise that "you can't know until you ask" – required Wanaque to bill the private insurance carriers before government benefits. (Pl.'s Br. in Opp'n to Summ. J., Regulatory Framework Section.)   Wanaque confessed that it failed to do so.  Consequently, all of Wanaque's claims violated federal and state law.

Relator's own experience with Wanaque's billing practices was borne out by Wanaque's own witness.  The amended complaint's allegations are supported by clear testimony.  Relator's counsel's investigation was therefore "reasonable under the circumstances" – *i.e.*, based on what counsel could know based on their client's knowledge, and before discovery commenced.

For example, consider the allegations pertaining to T.P. in the amended complaint. (Am. Compl. ¶¶ 84-94.) The pleading alleges that the only insurer listed on T.P.'s resident profile was New York Medicaid, which was true. (Am. Compl. ¶ 85; Pl.'s Stmt. ¶ 123.) The complaint alleges that Wanaque had Dr. Briglia complete certain paperwork so that Wanaque could bill New York Medicaid, which Wanaque did. (Am. Compl. ¶ 86; Pl.'s Stmt. ¶¶ 121-22.) The complaint also alleges that Dr. Briglia identified, and submitted his claims to, T.P.'s private insurer, GHI. (Am. Compl. ¶¶ 87-89). GHI paid Dr. Briglia for the care he provided to T.P. at Wanaque. (Am. Compl. ¶ 89). Relator produced discovery confirming these payments and the GHI coverage. (Pl.'s Stmt. ¶ 128-129.)

Relator conducted a pre-suit investigation, which revealed the facts asserted in the amended complaint. Discovery established the accuracy of those facts. There should be no dispute that counsel complied with Rule 11. No sanctions are warranted.

But the inquiry should not end there.

## IV.   DEFENDANTS HAVE TWICE MISUSED RULE 11

Rule 11 is a two-way street:

> The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called "hardball" litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct. **A court may**

> **impose sanctions on its own initiative when the Rule is invoked for an improper purpose.**

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987).[7]  *Accord In re Rosebar*, No. 13-00535, 2014 Bankr. LEXIS 5181, 2014 WL 7403573, at *3 (Bankr. D.D.C. Dec. 29, 2014) (penalizing the movant for filing a baseless sanctions motion). "Every federal court which has addressed the issue has held that Rule 11 motions are properly subject to the provisions of Rule 11." *Leoco, S.A. v. Caribe Crown, Inc.*, 571 N.E.2d 759, 760-61 (Ill. App. Ct. 1991).[8]  Accordingly, litigants must think

---

[7] From the 1993 Advisory Committee notes:

> As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.

Fed. R. Civ. P. 11 advisory committee notes.

[8] Citing: *Traina v. United States*, 911 F.2d 1155 (5th Cir. 1990) (affirming imposition of sanctions for frivolous sanctions motion); *Foy v. First National Bank of Elkhart*, 868 F.2d 251 (7th Cir. 1989) (a frivolous request for sanctions is itself sanctionable); *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 654 (9th Cir. 1988) (Rule 11 should not itself become a retaliatory device); *Meeks v. Jewel Companies, Inc.*, 845 F.2d 1421 (7th Cir. 1988) (under Rule 38, Rule 11's counterpart for appeals, any frivolous motion, pleading or request is subject to sanctions, including a motion or request for sanctions); *Local 106, Service Employees Int'l Union v. Homewood Memorial Gardens, Inc.*, 838 F.2d 958, 961 (7th Cir. 1988) (unwarranted motion for Rule 11 sanctions is itself sanctionable); *In re Central Ice Cream Co.*, 836 F.2d 1068, 1073 (7th Cir. 1987) (noting that district court held that request for sanctions under Rule 11 was itself "sanctionably

twice before threatening Rule 11 sanctions as a reflex response, since the very purpose of Rule 11 is to eliminate baseless litigation. *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 24 (2d Cir.1990).

### A. Wanaque's first Rule 11 threat was procedurally defective and meant to harass or intimidate.

Wanaque has misused Rule 11 on two occasions in this case. First, Wanaque threatened Rule 11 sanctions against Relator in an attempt to coerce a voluntarily dismissal of the original complaint. (ECF 66-3.) That threat was procedurally defective for at least two reasons: (1) it demanded the "immediate" dismissal of the complaint and (2) there was no attached, proposed motion. *See* Fed. R. Civ. P. 11(c) (requiring notice and a reasonable opportunity to respond); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient.").

The timing of Wanaque's first threat, along with Wanaque's failure to follow through on the threat, implicates an improper motive. Wanaque sent its first Rule 11 letter while its first motion to dismiss was pending, and the letter challenged the original complaint as "offer[ing] neither a cognizable legal theory, nor facts to

---

frivolous"); *Gaiardo*, 835 F.2d at 484–85 (3d Cir. 1987) (court may impose sanctions when Rule 11 is invoked for improper purpose such as additional tactic of intimidation and harassment).

demonstrate a violation of the FCA."  (ECF 66-3.)  Had Wanaque thought that the complaint was meritless, to the point of warranting sanctions, then Wanaque needed to file a separate Rule 11 motion to qualify for relief.  It failed to do so.  Wanaque never followed through on its February 23, 2017 threat, which suggests the purpose of that threat was to harass or intimidate Relator.

### B.       Wanaque's current Rule 11 motion is baseless.

Pivoting from its original Rule 11 theory, Wanaque now accuses Relator's counsel of not conducting an adequate pre-suit investigation.  The accusation is baseless.  Relator's counsel reviewed over 2,700 pages of documents prior to filing the *qui tam* complaint, which were provided to Wanaque in discovery.  These documents corroborated the Relator's principal allegation that, "[d]espite their obligation to seek other forms of payment prior to billing the government, Defendants systematically bill[ed] Medicare and/or Medicaid as primary payer thereby violating secondary payer laws."  Furthermore, Wanaque has since conceded that it billed New York Medicaid without first submitting its claims to private insurers.  (Pl.'s 56.1 Stmt. ¶¶ 100, 118, 128, 139, 145.)  In sum, Relator has corroborated and proven his allegations.  Wanaque's current Rule 11 motion should fail accordingly.

16

## <u>CONCLUSION</u>

Relator has produced evidence supporting the allegations of the amended complaint.  Relator's counsel therefore have not run afoul of Rule 11.  Wanaque, by contrast, has misused the Rule.  Wanaque's motion should be denied, and reasonable costs and attorney's fees incurred in responding to the Rule 11 motion should be awarded to Relator.

Respectfully submitted,

s/ Jeremy E. Abay
Jeremy E. Abay
John K. Weston
SACKS WESTON DIAMOND, LLC
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
 T: 215-925-8200 | F: 267-639-5422

*Attorney for Relator,*
*Jersey Strong Pediatrics, LLC*

Dated:  December 26, 2018