NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, the STATE OF NEW JERSEY, and the STATE OF NEW YORK, *ex rel.* JERSEY STRONG PEDIATRICS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>WANAQUE CONVALESCENT CENTER, WANAQUE OPERATING CO., L.P., and SENIORS MANAGEMENT NORTH, INC.<br><br>Defendants. | Civil Action No.: 14-6651 (KSH)<br><br>**OPINION** |

**HAYDEN**, District Judge.

Medicaid is "a cooperative federal-state public assistance program pursuant to which the federal government makes matching funds available to pay for certain medical services furnished to needy individuals." *United States ex rel. Wilkins v. United Health Grp., Inc.,* 659 F.3d 295, 298–99 (3d Cir. 2011), *abrogated on other grounds by Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). In recent years, whistleblower suits have been successful in recovering considerable funds for federal and state programs where violations of health-care programs are uncovered. And under the federal, New York and New Jersey False Claims Acts, 31 U.S.C. § 3729 *et seq.*, N.Y. State Fin. L. § 192 *et seq.*, N.J.S.A. § 2A:32C–1 *et seq.*, private citizens who bring these suits may share in a portion of recovered funds.

Plaintiff-relator Jersey Strong Pediatrics, LLC ("Jersey Strong") alleges that defendants Wanaque Convalescent Center, Wanaque Operating Co., L.P., and Seniors Management North,

Inc. (collectively "Wanaque") ran afoul of the False Claims Act and its state law corollaries by violating mandatory secondary payer laws that required Wanaque to submit claims to private insurers before billing Medicaid for services that Wanaque provided to its patients. Presently before the Court is Wanaque's motion for summary judgment and for attorneys' fees and costs ("motion"). (ECF No. 67). For the reasons set forth below, the Court grants the motion in part and denies it in part.

## I.  **BACKGROUND**[1]

Wanaque is a licensed, skilled nursing facility located in Haskell, New Jersey. (Def. 56.1 ¶¶ 1–2). Wanaque had a pediatric ward that housed and cared for ventilator dependent children. (Def. 56.1 ¶ 11). When treating patients at Wanaque, physicians provided those services through their own practices and billed the patients and their insurers through their own practices. (Def. 56.1 ¶ 15). Dr. Briglia, the sole proprietor of Relator Jersey Strong, was one of those physicians. (Def. 56.1 ¶¶ 9, 16). From 2003 to 2008, Dr. Briglia served as the pediatric medical director for Wanaque. (Def. 56.1 ¶ 18). After Wanaque terminated his tenure as the pediatric medical director, Dr. Briglia continued to treat patients at Wanaque. (Def. 56.1 ¶¶ 21–22).

At issue are claim submissions made by Wanaque to Medicaid for services provided to twelve minor patients: A.M., T.P., G.C., S.E., A.C., M.P, E.S., R.W., E.D., K.W., K.F., and D.K. (Def. 56.1 ¶¶ 25–27, 30, 35, 37, 40, 44, 48, 51, 53, 59, 67; ECF No. 68-7). According to Jersey Strong, claims and billing records show that Wanaque billed Medicaid as the primary payer even when these patients had private insurance or some other available medical benefits in violation of

---

[1] These background facts are taken from the parties' statements of material fact, pursuant to Local Civil Rule 56.1, (ECF No. 68, Wanaque's Rule 56.1 Statement of Material Facts ("Def. 56.1"); ECF No. 74-1, Jersey Strong's Responsive Statement of Material Facts ("Pl. 56.1")), as well as from Jersey Strong's First Amended Complaint ("FAC"), (ECF No. 23). To the extent that Jersey Strong admits to any material facts as stated by Wanaque, the Court will cite only to "Def. 56.1" and the relevant paragraph numbers.

the Federal False Claims Act ("FCA"), the New York False Claims Act ("NYFCA"), and the New Jersey False Claims Act ("NJFCA").[2]  (FAC ¶ 8).

## II.       <u>PROCEDURAL HISTORY</u>

In October of 2014, Dr. Briglia initiated this lawsuit through Jersey Strong.  (ECF No. 1).  The action was brought as a *qui tam* lawsuit on behalf of the United States, New Jersey, and New York alleging that Wanaque violated the FCA and its state law corollaries by ignoring mandatory secondary payer laws that required Wanaque to submit claims to private insurers before billing Medicaid.  (ECF No. 1 ¶ 1; FAC ¶¶ 1, 3, 8).  As a result, the United States investigated the allegations against Wanaque.  (Def. 56.1 ¶ 76).  The United States, New Jersey, and New York all declined to intervene in the case.  (ECF No. 5).  On July 14, 2017, Jersey Strong filed the operative complaint.  (FAC).

On July 28, 2017, Wanaque moved to dismiss, which Judge Wigenton denied.  (ECF Nos. 29–30).  Wanaque now moves for summary judgment and seeks attorneys' fees, arguing that Jersey Strong has failed to establish any violation of state or federal secondary payer laws and that Jersey Strong's attorneys have engaged in a specious and vexatious litigation, resulting in unnecessary expenditures of money and time.  (*See generally* ECF No. 67-1).

## III.      <u>LEGAL STANDARD</u>

### A.  Summary Judgment

Under Federal Rule of Procedure 56, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is material and genuine if it

---

[2] Jersey Strong makes no arguments concerning liability under the NJFCA and as a result, those claims are waived.  *Desyatnik v. Atl. Casting & Eng'g Corp.*, 03-5441, 2006 WL 120163, at *1 (D.N.J. Jan. 17, 2006) (noting that where a party fails to present an argument in opposition to a motion for summary judgment, those claims are abandoned).

"affects the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (quotation and alteration marks omitted). The familiar standard places on the party seeking summary judgment "the burden of demonstrating that the evidentiary record presents no genuine issue of material fact." *Id.*

## B. False Claims Act and Medicaid's Secondary Payer Laws

Civil actions under the FCA can be brought by the government itself, or as is the case here, by private plaintiffs acting in a *qui tam* capacity. *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1152 (3d Cir. 1991). The government may intervene, but whether or not it does, the private plaintiff may continue with his/her action. *Id.* Jersey Strong brings this lawsuit under 31 U.S.C. § 3729, which requires that the plaintiff must prove that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001). One can submit two types of false claims under the False Claims Act: factually false claims and legally false claims. *Wilkins*, 659 F.3d at 305. "A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." *Id.* Here, we are dealing with claims of legal falsity. (ECF No. 29 at 6–7).

There are also two theories of legal falsity under the FCA: express and implied. *Wilkins*, 659 F.3d at 305. "Under the 'express false certification' theory, an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to

4

Government payment in connection with the claim for payment of federal funds." *Id.* "[A]n entity makes an implied false certification when it 'seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment.'" *In re Plavix Mktg., Sales Practices and Prods. Liability Litig (No. II)*, 123 F. Supp. 3d 584, 600 (D.N.J. 2015) (Wolfson, J.) (quoting *Wilkins*, 659 F.3d at 305). The defendant's "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable." *Escobar*, 136 S. Ct. at 1996. The NYFCA mirrors the FCA. *State ex rel. Seiden v. Utica First Ins. Co.*, 96 A.D.3d 67, 71 (N.Y. App. Div. 2012).

As mentioned above, Medicaid is a health insurance program for low-income individuals that is funded jointly by federal and state governments. *Wilkins,* 659 F.3d at 298–99. The federal Medicaid statute has secondary payer requirements. 42 U.S.C. §§ 1396a, 1396k. "By law, all other available third party resources must meet their legal obligation to pay claims before the Medicaid program pays for the care of an individual eligible for Medicaid." *Medicaid Third Party Liability & Coordination of Benefits*, https://www.medicaid.gov/medicaid/eligibility/tpl-cob/index.html (last visited June 25, 2019). The federal government cedes control and responsibility for this third-party liability to the state's Medicaid plan. *Id.*

## IV.      ANALYSIS

### A. Submissions of Claim for Payment

To survive summary judgment, Jersey Strong "must provide evidence of at least one false claim." *United States ex rel. Greenfield v. Medco Health Sols.*, 880 F.3d 89, 99 (3d Cir. 2018). As a preliminary issue, Wanaque argues that the claims based on submissions for three of these patients fall outside the statute of limitations for the federal and state false claims acts. The statutes

of limitations differ: six years for FCA and NJFCA claims, 31 U.S.C. § 3731(b)(1); N.J.S.A. 2A:31C-11, and ten years for an NYFCA claim, N.Y. State Fin. L. § 192[1].  Minors A.M. and S.E. died on January 16, 2004 and September 17, 2004, more than ten years prior to Jersey Strong's filing of the Complaint on October 2, 2014.  (Def. 56.1 ¶¶ 28, 38).  Additionally, minor E.S. was a New Jersey resident who was discharged from Wanaque on June 20, 2006, almost eight years before the Complaint was filed.  (Def. 56.1 ¶¶ 49–50).

Jersey Strong does not make any arguments that would overcome these time barriers, and the Court finds that any state or federal False Claims Act claims based on submissions as to these three patients are barred by the respective statutes of limitations.  Jersey Strong also does not contest that two additional patients, minors R.W. and D.K. were never admitted to Wanaque.  (Pl. 56.1 ¶ 52; ECF No. 74 (making no mention of minor D.K.)).  As such, any claims based on submissions for these two patients are irrelevant.  Therefore, Jersey Strong's argument must be limited to seven minors: T.P., G.C., A.C., M.P, E.D., K.W., K.F.[3]

## B.  The Falsity of the Claims and Materiality

Under federal Medicaid regulations, states must "take reasonable measures to determine the legal liability of the third parties who are liable to pay for services" under the respective state's plan.  *United States ex rel. Forcier v. Comp. Sci. Corp.*, No. 12-1750, 2017 WL 3616665, at *2 (S.D.N.Y. Aug. 10, 2017) (quoting 42 C.F.R. § 433.138(a); 42 U.S.C. § 1396a(25)).  "Similarly, New York Medicaid regulations require providers '[a]s a condition of payment, . . . [to] take reasonable measures to ascertain the legal liability of third parties to pay for medical care and services.'"  *Id.* (quoting 18 N.Y.C.R.R. § 540.6(e)(1)).  New York Medicaid regulations also state

---

[3] T.P.'s claims fall outside of the federal FCA's statute of limitations, as Wanaque's last claim on her behalf was submitted on February 29, 2008.  (Def. 56.1 ¶ 31).  Thus, any arguments based on T.P.'s submissions will be limited to the NYFCA.

that:

> [n]o claim for reimbursement shall be submitted unless the provider has: (i) investigated to find third-party resources in the same manner and to the same extent as the provider would to ascertain the existence of third-party resources for individuals for whom reimbursement is not available under the medical assistance program; and (ii) sought reimbursement from liable third parties.

18 N.Y.C.R.R. § 540.6(e)(2). Providers are further required to "investigate the possibility of making a claim" to potentially liable third parties and to make those "reasonably appropriate" claims. *Id.* § 540.6(e)(3)(4).

Jersey Strong interprets New York's regulation as a blanket requirement obligating Wanaque to submit every claim to a potential third-party insurer "regardless of whether those insurers actually covered the service." (ECF No. 74 at 19). But what the regulation requires is that a provider make reasonable efforts to ascertain the legal liability of third-party insurers, and that those efforts are of "the same manner and to the same extent as the provider [would go to] to ascertain the existence of third-party resources" for patients for whom Medicaid is not an option. 18 N.Y.C.R.R. § 540.6(e)(1)–(2); *see also In re Visiting Nurse Serv. of N.Y. Home Care v. Dep't of Health*, 13 A.D.3d 745, 749 (N.Y. App. Div. 2004) (noting that the provider must reimburse Medicaid *unless* it "can show that it undertook reasonable efforts to comply" with 18 N.Y.C.R.R. 540.6(e)).

However, even if Wanaque did not take reasonable efforts to identify third-party payers that were proportional to those it would take to identify payers for patients without Medicaid eligibility, a regulatory violation alone does not establish a legally false claim for purposes of the FCA. *See United States ex rel. Lisitza v. Par Pharm. Cos.,* 276 F. Supp. 3d 779, 797 (N.D. Ill. 2017) ("'[I]t is not enough to . . . prove that [the defendant] engaged in a practice that violated a federal regulation' because '*violating a [] regulation is not synonymous with filing a false claim*.'"

(quoting *United States ex rel. Grenadyor v. Ukranian Vill. Pharmacy*, 772 F.3d 1102, 1107 (7th Cir. 2014))). The regulatory violation must be both connected to the "actual submission of a false claim," *Greenfield*, 880 F.3d at 98, and be "material to the Government's payment decision," *United States ex rel. Petratos v. Genetech, Inc.*, 855 F.3d 481, 489 (3d Cir. 2017) (quoting *Escobar*, 136 S. Ct. at 1996).

Of the seven remaining minor patients, Jersey Strong has produced the actual coverage policies for only two. For K.F., T.P., M.P., and E.D., there is circumstantial evidence of insurance coverage, but none of this evidence indicates the specific policies attached to the patients and what the policies covered. (Def. 56.1 ¶¶ 68–69; Pl. 56.1 ¶¶ 128–129, 133, 137–38, 144). The absence of the specific insurance policies for K.F., T.P., M.P., and E.D. from the record evidence is fatal to Jersey Strong's FCA claims. Without these minor patients' specific, personal insurance policies, it is impossible to determine if an actual false statement exists and whether that statement was material. Specifically, without knowing whether these policies covered the services Wanaque provided these patients, one cannot assess Wanaque's reasonable efforts to comply with 18 N.Y.C.R.R. 540.6(e). And further, it would be futile to try to ascertain whether the Wanaque's alleged misrepresentations were "material to the Government's payment decision," because if the services were not covered by private insurance, it is possible that "the Government would have paid the claims with full knowledge of the alleged noncompliance." *Petratos*, 855 F.3d at 490. In short, Jersey Strong "may not prevail on summary judgment by simply demonstrating" that Wanaque submitted federal claims without connecting those claims to the patients' individual policies. *Greenfield*, 880 F.3d at 99–100.

While Jersey Strong has introduced administrative decisions recouping payments from Medicaid, those decisions were based on the providers' failure to comply with 18 N.Y.C.R.R.

540.6(e), which the Court is unable to assess here. The "mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment," and the Court will not make the speculative connections needed to fill the evidentiary gaps in the record required to "enable a jury to reasonably find for the nonmovant," nor will it require a jury to do so at trial. *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017).

As for A.C., there is no dispute that his care at Wanaque was covered by Aetna from 2004 to 2008 and that Wanaque billed Aetna for its services during that time period. (Def. 56.1 ¶ 42). Nor is there a dispute that Wanaque billed Medicaid for A.C.'s care from May 15, 2008 to June 5, 2008. (Def. 56.1 ¶ 43). Jersey Strong has not pointed to any evidence in the record explaining this shift in coverage or indicating that Wanaque improperly billed Medicaid for the last three weeks of A.C.'s residence at Wanaque. Again, the Court refuses to speculate about whether there was an actual false statement related to A.C.'s submissions.

The Court does find, however, that there are genuine issues of material fact with respect to three of the four elements of an FCA claim based on submissions Wanaque made for K.W.[4] The parties disagree about whether K.W.'s insurance policy covers the services she received at Wanaque, which is relevant to the fact finder's inquiry concerning whether those submissions were legally false. For example, there are factual disputes as to whether some of the services provided at Wanaque, such as treatment for seizures, and speech, physical, and occupational therapy, were "sub-acute" or "rehabilitative in nature," and thus potentially covered by K.W.'s private insurance policy. (Def. 56.1 ¶¶ 12–14; Pl. 56.1 ¶ 97). As explained above, whether K.W.'s insurance policy explicitly denied or allowed coverage of the services Wanaque provided to her is material to whether Wanaque made reasonable efforts to comply with 18 N.Y.C.R.R. 540.6(e). Additionally,

---

[4] There is no dispute as to whether Wanaque submitted claims for payment for K.W. (ECF No. 67-1 at 20–21).

Jersey Strong has pointed to some evidence that Wanaque never billed K.W.'s private insurer. (Pl. 56.1 ¶ 100). And, if Wanaque's efforts to comply with New York Medicaid regulations were not reasonable, Jersey Strong has highlighted situations where New York's Office of the Medicaid Inspector General has sought the return of Medicaid payments, (ECF No. 74 at 15), which is a factor in assessing whether the allegedly false claim was material, *Petratos*, 855 F.3d at 489–90.

Last, there is the issue of scienter. To establish a violation of the FCA, Jersey Strong must show that Wanaque acted knowingly. 31 U.S.C. § 3729(a). This means that Wanaque must have had either "actual knowledge of the information," acted with "deliberate ignorance of the truth or falsity of the information," or acted "in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1)(A). Wanaque has stated that it had a system in place to "track[] down potential private insurers." (ECF No. 67-1 at 29; ECF No. 68-3 at 5–6 (explaining that Wanaque would call private insurers)). Jersey Strong, however, cites to the testimony of Jean Bruzzone, Wanaque's designated 30(b)(6) witness, who was authorized to testify as to Wanaque's compliance with secondary payer laws, where she stated that she did not know if Wanaque had any compliance programs or policies with respect to Medicaid's secondary payer requirements. (Pl. 56.1 ¶¶ 79–80). Nor was Ms. Bruzzone necessarily aware of Wanaque's written billing policy. (Pl. 56.1 ¶ 84). Thus, there are genuine issues of material fact around the issue of scienter.

## C. Fees and Costs

Wanaque also moves for attorneys' fees and costs pursuant to 31 U.S.C. § 3730 and 28 U.S.C. § 1927. (ECF No. 67-1 at 32). Such an award may be granted where a relator's pursuit of an FCA suit was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). Based on the ruling on this motion, the Court does not agree that Jersey Strong's lawsuit falls into this category and it denies Wanaque's application for

attorneys' fees and costs.


## V.    <u>CONCLUSION</u>

For the aforementioned reasons, the Court grants Wanaque's Motion in part and denies it in part.  An appropriate Order accompanies this Opinion.


/s/ Katharine S. Hayden

Date: June 28, 2019                                  Katharine S. Hayden, U.S.D.J.